May it please the Court. My name is Penelope Strong, Your Honors, and I represent the appellant Christopher Kortlander. This case appears in an atypical posture of a citizen who has experienced the raw power of government to execute search warrants against their residence and their business. And in the context of an individual who was not indicted by federal authorities after several years of investigation, and then sought to have in particular two search warrant applications unsealed by the District Court in Montana. To recount a bit of the facts, my client owns a historic complex, a building south of the Custer Battlefield in Montana. He was raided on March 31, 2005 by over 20 federal, state, and local agents. They seized a variety of property. And he was raided again in September of 2008 with some more Indian artifacts being seized. After prolonged negotiations, the U.S. Attorney's not to indict or bring any further charges against Mr. Kortlander. So in the context of unsealing search warrant materials, we have an unusual case here because there was no follow-up court case that was filed. My client originally proceeded pro se before the District Court judge and simply submitted a letter requesting that all the documents, in particular the two sworn applications, be unsealed. At that time, he did not seek public access. The court denied that after a letter response came from the government. And then Mr. Kortlander retained me to file a... We're familiar with the facts, so you're going to use up your time going over... I will proceed. We deal with what we've got, which is there's been partial access. So the government has some standing issues, and it also argues that there are concerns about going beyond Mr. Kortlander's personal use and exposing information, which may, in some respects, apparently, according to them, have some problems. Well, it is our argument that when the judge issued the order where he only allowed it to be used for litigation or personal use, and he specifically ordered that he could not place it on a website, that that is a violation of the First Amendment right of access, the common law right of access, and it represents significant potential censorship. As far as the standing issue, we believe that we do have standing. That was briefed under an order to show cause. Our specific reason there is, if you look at the order, the judge says, don't do this, Mr. Kortlander. Obviously, that immediately would expose my client to a contempt of court prosecution if he sought to post it on a website. Is it your position that there's an absolute right of access and to everything that's in the file, or are there any limitations on that? It's our position now in this posture that my client does have, I would say, pretty much an unqualified right of access, Your Honor. Of course, the common law right of access is different from a First Amendment right. And we would say that he, although he was the subject and the target of the searches, that he also stands, as in the shoes of the judge, he does assert his First Amendment right, although that was not argued in detail, to the lower court. That didn't become an issue until the reply. Isn't that correct? That's correct, Your Honor. However, I think all the parties were focused on the law, the case law that related to just unsealing cert warrant applications and whether or not a current investigation was pending. And I point out that in his original letter, he didn't say, I want this information because I want to publish it. No, he didn't. He had a very specific reason why he wanted it, which was he represented that he would like to get some of his property back. That's true. But when I took up the sword, so to speak, for him, I indicated that we wanted unfettered access. And I would represent that after reviewing with him whether he wanted it limited to the public. He said, no, it's fine if anyone sees it. And the government conceded that there were no longer confidentiality considerations in the investigation with regard to grand jury matters, CIs, confidential informants, witness privacy that were of any concern. Let me ask you this. Would it be proper for the district court simply to redact the names of the witnesses? I don't think it was necessary, Your Honor, because my declaration pointed out That's not my question. Would it be okay for the district court to do that now? It could be, but it would depend on the witness and their role in that particular investigation. But I think the district court was more concerned with the website posting. And to fast forward to that, NRA Oregonian specifically says, as does other case law, where you're looking at the First Amendment right of access, first of all, there's a presumption of access. That's different from the common law access where a party coming forward, as in one of the Kaczynski cases, had to show the need and the purpose for accessing that judicial information. In Kaczynski, I believe it was, if not, there were several Kaczynski cases, but there was a competency report that was sought in one, and the court did redact in part there. But the point I'm getting to is here there was no specific finding of fact by Judge Siebel as to why there should not be website postings and website postings should be specifically barred. Maybe we should remand it back for that purpose. That would be fine as far as we're concerned. We think it's a fairly simple determination this Court could make, and I realize the government has their position on that as well, that Mr. Courtlander did not say, I want to post on a website, but it's also our position under the First Amendment, he shouldn't have to present arguments as to why he wants to access this material, although we did do that in the context of the specific facts of many of his artifacts had been voluntarily returned, but we had some real problems because the investigating agent refused to return the rest of them. So we were seriously looking at a 41G motion, and we did present the specific reasons that we'd need to look at the application to prosecute that motion. But that was not the sole focus. In my declaration, I also stated that he wanted to assert all of his constitutional rights, right of access, and although it isn't controlling on this Court in Montana, under our state right to know, any citizen can get search warrants. So that's our position, is that the website condition needs to go. I'd like to reserve about two minutes of my time, if I could. You have that left. Thank you. All right. Thank you. Good morning, Your Honors. Leif Johnson for the United States, and may it please the Court. Obviously, this is a substantial question that the Court is considering, this First Amendment access or the common law access to search warrant materials. It's an issue of first impression, which is why the standing issue in this case becomes as important as it is. There is, if the record is reviewed fairly, Mr. Courtlander here has identified only someday intentions of using this material in a manner which would contravene the district court's order. That's not enough under this Court's holdings in the Thomas case and in Long Beach. He's carefully avoided making any statement that he actually wants to publish, and that not only was apparent in the district court, but it's apparent in his appellate brief here before this Court. On page 6, Courtlander says, if appellant seeks to breach these limits, then he faces potential prosecution. On page 10 of his brief, he states, if Mr. Courtlander seeks to post any of this information gained or otherwise disseminated, he exposes himself to risk of contempt, and so on. Those are someday intentions. They are not enough to invoke this Court's jurisdiction under Article 3. And that was particularly important at the district court, because obviously if he's the subject of all of this, and he's, you know, he was the target, he was the person whose property was seized, he wants access, he stated a purpose at the outset, he broadened that purpose. He is the one affected, you know, under, he's the one who is injured by A, the activity, and B, is the one who is subject to a restrictive order on his property. So, you're saying, well, every time he wants, as he's working with these materials to expand the access or the use, he's got to go back to the district court. Is that your position? That is not, Your Honor. I think this controversy right now is focused on whether or not he can publish these on websites. I mean, that's what the government raised as a concern below, and the district court tried to accommodate all of the party's interests, which I think Well, how did the district court balance those interests? In other words, who's got the burden to show that there is some reason to limit use on the website? Let me just step back a moment. Counsel represented that the government conceded that there's no confidentiality issue at stake here involving CIs or anything else. Is that your concession? Your Honor, I think that overstates our concession. I think our concession is that the government doesn't have any concerns about those matters as they relate to Courtlander, so that he can use that information for filing his civil complaint, which he did, or so that he can use it to discover what he did wrong. So if it's in a civil complaint, for example, so if he took and quoted anything from the court, and that presumably would not be under seal, because he's not under any obligation, as I understand it, to file only under seal, then that would be publicly available and could be posted on the Internet. Isn't that correct? To the extent that he files with the court and there are attachments to his filings, those could be available publicly on the court's website. Yes, Your Honor, that's true. On the court's website and then picked up, and as we know famously even these days, anything that is in the public domain can wind up on the Internet in a nanosecond, apparently. So would he be violating the court's order in that respect? He would not. And that's pretty clear from the order itself. The order itself basically says you could use these specifically directed for using them for inclusion in future court filings. Okay, so if he did that and they would wind up on the website, what's the problem with the website now? Why doesn't he have standing to say, why do I have to have any restriction on how I can use these? I've got access and now it brings me back to why I asked my question. Is it something about, where is the authority to say that somebody has enough standing to a, get access, and b, get a court order that allows impartial use, doesn't have standing to argue about the scope of the restriction? Your Honor, well, if you look at the Nixon case, there were a number of tapes obviously at issue, and the court said, the Supreme Court said, well, it would be appropriate to disclose the transcript. It would be appropriate to allow people to listen to them. But it might not be appropriate to disclose the tape. Why? In other words, the district court There was a reason. Why? There was a reason. Because there was national security issues. I mean, you've got the President of the United States and his closest advisers. You're saying that's not the case here. He's been given access and he can file the whole shooting match as attachment to a complaint and can wind up on a website. Right, Your Honor. And the reason that the court didn't explore those interests further and that we don't have the kind of record that you would want to fully apply the common law right of access in the First Amendment is because Mr. Courtlander didn't say, here's what I want it for. Okay, fine, counsel. But you've been arguing standing. You started your argument saying it's an important issue. We all can agree with that. Okay. You say he doesn't have standing. The question is, it seems, that you're concerned about the scope and the balancing. So he does have standing, presumably. Let's assume he has standing. Okay. Okay. Then what is the government's position? The government's position is what? That it's okay with him to have it, but there are some concerns that you have? Yes. You would like to go before the district court with that in mind and explain to the court so the court can apply the balancing under the common law approach? Maybe give them everything and then they don't even get to the First Amendment. Yes, Your Honor. That is exactly our position. If you accept, if you don't accept our standing argument and we go back, our position would be, look, the wider publication really does open a can of worms in the sense that under the common law right, the ends of justice test might not be well served and there may be some limited reasons for withholding some of the information for, say, a website posting that wants to point out a confidential informant who may live in the community, who may have his own private interests, who may want to present those interests in that hearing. That is the nature of an inquiry that obviously should occur before this Court actually decides on the issue of the nature of the right. And the district court, in the Stone case that we cited, Your Honor, out of the Fourth Circuit says, you know, the district court really is obligated to sort of find out what is the source of the right to begin with. And if the common law right is good enough, then we don't get to the constitutional right. So that brings me to my question then. You said this case of first impression on the common law right, that has been an issue reserved by prior decisions, at least one of this Court. Does the government contest that the common law right would extend to these materials? Your Honor, I think there is some basis in Times-Mirror to say that the common law right does not apply in a case-by-case basis. On a case-by-case basis. Yes. Reserve the question generally. Yes. Okay. And we look back again at the Nixon case. But my question is, does the government — in other words, when it goes back to the — let's assume just — it goes back to the district court to — and you said the district court should be given the opportunity. Is it going to be looking to the common law right of access? That would be its first look, and then maybe never have to reach the First Amendment. What would be guiding its balancing? Yes, Your Honor. I think In re Coppoli says, look, you look at the common law right first, and then you decide the constitutional question. The common law right test requires Courtlander to basically say that he has a need that would serve the ends of justice, which is he can't be serving some private interest in some spiteful dispute with some neighbor of his. He has to have an interest that serves the end of justice, which he very well may have here. And that's his initial burden. And then the government has the ability to come in and say, not only do we have some law enforcement information here that should be redacted, but there are some of these confidential witnesses who also may have interests, and they may very well want to appear in the court and express their own — as an amicus, their own interest in nondisclosure, which — in which case the Court would balance those interests and try to accommodate all of the party's interests to the extent it can with the proviso that many of the Court's cases say, that there is really a presumption in, you know, our disclosure and that the government's interests really do need to be substantial. And so that would be the test that we would be presenting. And I would suggest to the Court that, having viewed the affidavits, there are some  to the Court's consideration by the Court, like investigative methods and technologies used in one of the undercover investigations that very well may not be something that would serve the ends of justice if it were disclosed widely on a public website.  If there are no further questions, Your Honor. No. Okay. Thank you. Ms. Omina. In brief response, we do believe that Mr. Courtlander has a standing. And just — I would like to mention that an individual who's been through several years of intense Federal investigation, two raids, seizure of property, of course, is not interested in having to have himself exposed to an order to show cause or a misdemeanor for contempt of prosecution. Okay. I think we have the standing issue under control. If there is a remand, any direction that could be given to the Court, we would ask be given. We realize that, under the current case law, common law right of access may trump looking at the First Amendment right of access, but frankly, I know that we presume legislation to be constitutional. We don't like to go to constitutional issues first, but I think sometimes that we should. Yeah. We'll make that decision. All right. Thank you. Thank you both. Interesting case, and we appreciate the argument. The case is submitted, and we'll take a very short recess, probably 10 minutes at most. Okay. You know what's interesting about this case?
judges: Fisher, Gould, Paez